# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**STATE NATIONAL INSURANCE COMPANY,**     **PLAINTIFF/COUNTER-DEFENDANT**

VS.     **CIVIL ACTION NO. 4:10CV62-P-S**

**MARKETING SERVICES, INC. and**
**WHITE GOLD COMMODITIES, INC.,**     **DEFENDANTS/COUNTER-PLAINTIFF**

## MEMORANDUM OPINION

This matter comes before the court upon State National Insurance Company's motion for summary judgment [docket number 44]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

Marketing Services, Inc. and White Gold Commodities, Inc. are two Greenville, Mississippi businesses dealing in the cotton trade. Both entities are fully owned by Mr. Jim Dawkins with Mr. Darrell Forman as vice president. With regard to the instant matter, Marketing Services provided the financing for White Gold Commodities to acquire, ship, and sell cotton from a Free Trade Zone warehouse in China for sale to Chinese customers.

Marketing Services entered an agency agreement with Mr. Tang Dong Ming on August 26, 1997 and entered another agency agreement with Mr. Tang Zhong Qing, Tang Dong Ming's father, on May 18, 2003. It is undisputed that the roles played by the Tangs included agents, cotton brokers, and customs clearing agents. Essentially, the cotton would be shipped to China and the Tangs would clear the cotton through customs and see that it was stored in the warehouse operated by Nan Kong

1

Development Co (NKD). The Tangs would later seek buyers for the cotton and, according to Marketing Services and White Gold Commodities, would only be authorized to sell any of the cotton upon express authorization by Jim Dawkins and/or Darrell Forman.

In December 2008 Marketing Services purchased several blocks of cotton from the Texas High Plains region and hedged the cotton under Marketing Services's name. After the hedging was in place, the cotton was booked in White Gold Commodities's name. White Gold Commodities then invoiced the cotton to White Gold Commodities, Inc.'s China office.

Some time before August 2009 Marketing Services and White Gold Commodities contacted their insurance agent, Mr. Dan Moore, about 880 bales of cotton that were missing from the warehouse in China. They hired a Mr. Ho Yeng Kin to investigate the matter.

On August 1, 2009 Mr. Ho emailed Jim Dawkins, Darrel Forman, and Dan Moore informing them that the 880 bales were sold in June 2009 by NKD bonded warehouse and that 1, 134 bales were still stored there. Mr. Ho also warned in the email to "be very careful of this company," referring to Nan Kong Warehouse.

Marketing Services and White Gold Commodities assert that Tang Zhong Qing conspired with Mr. Liu Gang of the NKD warehouse to sell 880 bales of cotton, without permission, for a fraction of what the cotton was worth.

On August 11, 2009 Dan Moore, their insurance agent, emailed Marketing Services and White Gold Commodities to inform them that the loss would not be covered because of the involvement of their agent, Tang Zhong Qing, who arranged for the unauthorized sale of the 880 bales.

On November 5, 2009 Marketing Services and White Gold Commodities received only

$56,626.00 for the subject 880 bales, over $250,000.00 less than what the cotton was worth.

On November 24, 2009 Marketing Services and White Gold Commodities received a second denial of coverage letter from Mr. Roth Manser of AXA, the primary insurer for whom State National Insurance Company is the American representative entity, also citing the involvement of their agent, Mr. Tang.

Both denial letters cited Paragraph 8A of the subject policy as the reason for denial of coverage.

On August 1, 2008 State National Insurance Company issued an insurance policy to Marketing Services, Inc. and White Gold Commodities, Inc., good from 8/01/08 to 8/01/09. Paragraph 8A of the policy states:

> In no case shall this insurance cover any loss, damage or expense as a result of: **[m]isappropriation**, concealment, conversion, infidelity and/or dishonest act(s) committed **by or at the instigation of the Assured**, their employees **or appointed agents**. This exclusion shall not apply to carriers for hire or loss of and/or theft of documents of title by reason of the actions of any third party obtaining possession of the insured goods by fraud, malice and/or dishonest act.

(emphasis added).

On March 31, 2010 State National Insurance Company filed the instant action seeking judgment declaring that the loss of the 880 bales of cotton is excluded from coverage per Paragraph 8A of the subject policy. On September 1, 2009 State National filed the instant motion for summary judgment.

## II. DISCUSSION

**A. Summary Judgment Standards**

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection*

*Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. Principles of Insurance Contract Construction**

The interpretation of an insurance policy is a question of law, not one of fact. *Lewis v. Allstate Ins. Co.*, 730 So.2d 65, 68 (Miss. 1998).

In *Centennial Insurance Company v. Ryder Truck Rental, Inc.*, the Fifth Circuit summarized the rules of interpretation of insurance contracts in Mississippi as follows:

5

> First, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written.
>
> Second, it reads the policy as a whole, thereby giving effect to all provisions.
>
> Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policyholder.
>
> Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer.
>
> Fifth, when an insurance policy is subject to two equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured.
>
> Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, it must read any doubtful provision against the insurer.
>
> Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible.
>
> Finally, although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

149 F.3d 378, 382-83 (5th Cir. 1988) (reformatted for ease of reference).

Having considered the circumstances and the parties' arguments, the court concludes that Paragraph 8A of the subject policy plainly and unambiguously excludes the defendants' claim for the partial loss of the market value for the 880 bales of cotton because of the "misappropriation ... [was] committed by or at the instigation of the Assured[ 's] appointed agent" Tang Zhong Qing. Accordingly, the court need not continue through the seven remaining canons of insurance contract construction quoted above.

The defendants do not dispute that Mr. Tang the elder was their agent, broker, and customs clearing agent. They argue, however, that Mr. Tang exceeded his authority as their agent by selling the 880 bales for less than market value without their express permission. Though this is no doubt

6

the case, the fact remains that Mr. Tang was their admitted "agent" beginning as early as the May 18, 2003 agency agreement between Mr. Tang the elder and the defendants. Accordingly, pursuant to Paragraph 8A, any misappropriations of cotton, including partial misappropriations as is the case in this instance, by an agent of the insured, in this case Mr. Tang the elder, is excluded.

The defendants' argument that the insurer's investigation of the matter was not thorough enough is likewise unavailing since the operative facts that Mr. Tang the elder was an "agent" who "instigated" the "misappropriation" of the fair market value of the 880 bales of cotton are clearly excluded by Paragraph 8A.

Finally, the defendants' argument that the second sentence of Paragraph 8A, the exclusion to the exclusion, as it were, applies is without merit. The sentence reads: "This exclusion shall not apply to carriers for hire or loss of and/or theft of documents of title by reason of the actions of any third party obtaining possession of the insured goods by fraud, malice and/or dishonest act." The defendants have not shown as a matter of law that either that "carriers of hire" or "theft of documents of title" are involving in this matter.

### III. CONCLUSION

For the reasons discussed above, the court concludes that the defendants have not met their burden in demonstrating a genuine issue of material fact warranting a trial in this matter and denial of State National Insurance Company's motion for summary judgment [docket number 44]. Accordingly, given the court's conclusion as a matter of law that the subject policy exclusion language plainly and unambiguously excludes coverage for the partial loss of the subject 880 bales of cotton, the motion for summary judgment should be granted. A Final Judgment shall issue

forthwith,

**THIS DAY** of January 18, 2012.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE